## JAMES McWILLIAMS TOWING LINE v. SHAW.

(District Court, E. D. New York. February 15, 1923. Supplemental Opinion, April 19, 1923.)

1. **Collision ⬾144—At night between passing tug and barge anchored in fairway.**
   Lack of evidence to show that a tug, which came into collision at night with a barge anchored in East River, was herself carefully navigated, *held* to limit her owner's recovery to pay damages, though the barge was chargeable with negligence for being allowed to drift from a former anchorage into the fairway without calling for assistance.

2. **Collision ⬾146—Liability of part owner limited to his proportionate interest in vessel.**
   That a part owner of a vessel liable for collision is also owner of other vessels does not increase his personal liability, which is limited to the same proportion of the damages that he owns in the vessel.

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit for collision by the James McWilliams Towing Line, owner of the tug Hokendauqua, against Maurice R. Shaw. Decree for libelant.

Leo J. Curren, of New York City, for libelant.

Willard M. Harris, of Philadelphia, Pa., for respondent.

GARVIN, District Judge. [1] The James McWilliams Towing Line has brought an action in admiralty in personam against Maurice R. Shaw, claiming damages sustained by libelant's tug Hokendauqua, as the latter came into collision with the barge Ruhama Shaw. The respondent has filed a cross-libel. The barge, with two others, the Ruth and the Lottie, all loaded with stone, was anchored somewhere in the neighborhood of the Poorhouse Flats on the New York side of the East River, having been taken there by the tug John G. Chandler. The tug itself selected the anchorage and directed the anchoring. The barges began to drift down the river soon after they were anchored, and finally brought up near the Williamsburg Bridge, about 200 feet from the Brooklyn shore. There they obstructed the channel, although not completely. The witness Felney for the respondent admitted, however, that it was no place to be anchored.

The barge Lottie was taken away by a tug, which could have taken away the two remaining barges, one at a time, to some nearby place of safety, even if it was too small to have towed them any considerable distance. This was not done, nor was any attempt made by those on the barges to obtain assistance, either while they were drifting or later at anchor, except to the extent of taking away the Lottie. Some time in the evening, about 9 or 9:30 o'clock, after dark, the collision occurred. The first anchorage was insufficient, the neglect to call for assistance, while drifting, was inexcusable, the delay in accomplishing a secure anchorage presumes incompetence, and, finally, the behavior of all three barges, while anchored in a fairway, assumes gross negligence. After the Lottie was taken away, each barge showed only two white lights.

The tug Hokendauqua seems to have been proceeding carefully with its tow, but there is no evidence upon this point offered by the tug, due to the death of witnesses. The Ruth and the Ruhama Shaw each showed two white lights, as stated. These lights, it is claimed, were observed by the Hokendauqua, but believed to have been a part of the shore lights on the Brooklyn side. A Capt. Robert Willmott testifies that this confusion might easily exist. The captain and lookout of the Hokendauqua are dead. However this may be, there is no evidence that those navigating the tug were proceeding with care or that they were confused by the lights.

[2] The presence of the barges, at anchor, at such a spot in the East river, with failure to give notification thereof, seems to me to be negligence on the part of the owners. It has been proved that Maurice R. Shaw owned one-sixteenth of the Ruhama Shaw, and so he is responsible only for that amount of the damage sustained by the Hokendauqua for which he is liable. But, as the tug has failed to prove itself free from negligence, it must assume one-half of the damage.

There will be a decree, therefore, against Shaw for one-thirty-second of the damages, which will be computed by a commissioner. I cannot find any justification for considering the contention that Shaw is liable in a greater amount because of his ownership or interest in other vessels.

The cross-libel brought by Shaw will be dismissed.

## Supplemental Opinion.

Since the foregoing opinion was filed, my attention has been called to an inadvertent error therein, contained in the computation of the damages. The award against Shaw should be fixed upon a basis of not more than the value of his one-sixteenth interest in the Ruhama Shaw.

There will be a decree therefore against Shaw for so much of the Hokendauqua's damages as shall not exceed one-half thereof, nor exceed the value of Maurice Shaw's one-sixteenth interest in the Ruhama Shaw, and interest thereon from September 4, 1917. It will be referred to a commissioner to ascertain the damages of the James McWilliams Towing Line and the value of Maurice Shaw's interest in the Ruhama Shaw.